UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DODIE KINSLEY,

      Plaintiff,

v.                                    Case No:  2:13-cv-564-FtM-DNF

CAROLYN W. COLVIN, Acting
Commissioner of Social Security[1],

      Defendant.

---

## OPINION AND ORDER

Plaintiff, Dodie Kinsley, seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.  For the reasons set out herein, the Court finds that the decision of the Commissioner is due to be **AFFIRMED**, pursuant to § 205(g) of the Social Security Act, 42 U.S.C § 405(g).

## I.      Social Security Act Eligibility, Procedural History, and Standard of Review

The law defines disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted, therefore, for Commissioner Michael J. Astrue as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d) (2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Procedural History

On February 3, 2010, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits.  On February 9, 2010, Plaintiff filed a Title XVI application for supplemental security income.  In both applications, Plaintiff alleged a disability onset date of December 31, 2009.  Plaintiff's request for benefits was initially denied on July 12, 2010.  Thereafter, Plaintiff filed a written request for a hearing on August 17, 2010.  Plaintiff failed to present herself to her first hearing set on September 29, 2011.  Plaintiff submitted a letter showing good cause and a second hearing was scheduled for November 29, 2011.  Plaintiff attended this hearing but her attorney failed to appear and a new hearing was rescheduled.  On March 30, 2012, a hearing was held before Administrative Law Judge Ronald S. Robins ("the ALJ") in Fort Myers, Florida.  On May 9, 2012, the ALJ rendered his decision in which he determined that Plaintiff was not under a disability, as defined in the Social Security Act, from December 31, 2009, through the date of his decision.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on June 5, 2013.

### B.    Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion.  Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r.*, 363 F.3d 1155, 1158 (11th Cir. 2004)

(citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. § 404.1520(a)(4)(i).  If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R.

§ 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id.* At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f) . If the claimant can still perform his past relevant work, then he will not be found disabled. *Id.*

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id.* In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004).  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

## II.     Background Facts and Summary of ALJ's Findings

### A.  Background Facts

Plaintiff was born on June 8, 1981, and was 28 years of age at the time of the alleged onset date. (Tr. 29).  Plaintiff has at least a high school education and is able to communicate in

English. (Tr. 29).  Plaintiff has no past relevant work experience.

### B.  The ALJ's Findings

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2012, and had not engaged in substantial gainful activity since December 31, 2009, her alleged onset date. (Tr. 21).  At step two, the ALJ determined that Plaintiff had the following severe impairments: diabetes mellitus, history of asthma, obesity, bipolar disorder and borderline intellectual functioning. (Tr. 21).  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 24).

Before proceeding to step four, the ALJ made the following residual functional capacity ("RFC") determination:

> The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexetertional limitations: The claimant is able to frequently perform simple, unskilled, and repetitive tasks in a non-stress work environment.  The claimant would have occasional difficulty understanding, remembering, and carrying out complex instructions.

(Tr. 25-26).  At step four, the ALJ found that Plaintiff has no past relevant work. (Tr. 26).

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 30).  Based on the testimony given by a vocational expert present at the March 30, 2012 administrative hearing, the ALJ found that an individual with Plaintiff's RFC could perform the occupations of ticket taker and mail sorter. (Tr. 29).  Given this finding at step five, the ALJ found that Plaintiff was not disabled.

III.    **Analysis**

   Plaintiff raises two issues on appeal: (1) whether the ALJ's RFC assessment is supported by substantial evidence, and (2) whether the ALJ erred in his consideration of Plaintiff's daily activities and ability to care for her child when assessing Plaintiff's credibility.  The Court will address each issue in turn.

### A.  Whether the ALJ's RFC assessment is supported by substantial evidence

   Plaintiff argues that the ALJ's conclusion that Plaintiff's severe impairments are not disabling is contrary to the substantial evidence of record and that her impairments cause her to be significantly more physically and mentally limited than the ALJ assessed in his RFC determination. (Doc. 23 p. 14).  Plaintiff contends that the medical evidence shows that Plaintiff's chronic physical conditions preclude her from performing a full range of work at all exertional levels. (Doc. 29 p. 1).  Further, Plaintiff argues that the ALJ failed to account for all of Plaintiff's mental limitations caused by her psychological impairments in his assessment of Plaintiff's RFC. (Doc. 29 p. 3).

   Defendant responds that contrary to Plaintiff's contentions, substantial evidence supports the ALJ's assessment of Plaintiff's RFC. (Doc. 26 p. 4).  Defendant argues that while Plaintiff complained of neck, back, and left leg pain, there is little objective evidence to establish that she had a medically determinable impairment that accounted for her subjective complaints. (Doc. 26 p. 6).  Defendant argues that the ALJ discussed Plaintiff's treatment for diabetes and other impairments, but noted that the medical evidences does not demonstrate that Plaintiff's alleged pain resulted in any work-related limitations. (Doc. 26 p. 8).  Additionally, Defendant argues that the ALJ's RFC finding accounted for all of Plaintiff's mental limitations. (Doc. 26 p. 13).

"The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Commissioner of Social Security*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009).  In determining a claimant's RFC, the ALJ must consider all of the relevant evidence of record. *Barrio v. Commissioner of Social Security*, 394 F. App'x 635, 637 (11th Cir. 2010).  However, the Eleventh Circuit has consistently held that "the claimant bears the burden of proving that [she] is disabled, and consequently, [she] is responsible for producing evidence in support of her claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  Further, in order to be entitled to disability insurance benefits under Title II of the Act, a claimant must establish that he became disabled on or prior to the expiration of his insured status.  *See* 20 C.F.R. §§ 404.315; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (noting that a claimant must prove he was disabled on or before the date last insured for DIB).

In his opinion, the ALJ carefully reviewed Plaintiff's medical record in his assessment of Plaintiff's RFC.  The ALJ began by noting that in February 2010, Plaintiff began care with nurse practitioner Darryl Lacy[2] for diabetes and chronic obstructive pulmonary disease ("COPD"). (Tr. 21).  Treatment notes from this time indicate that Plaintiff was not currently taking medication for diabetes. (Tr. 21, 302).  Plaintiff indicated that she was controlling her diabetes through diet and exercise. (Tr. 21, 302).  The ALJ noted that Plaintiff reported that she checked her blood glucose level four times a day. (Tr. 21, 302).  Plaintiff denied having any blurred vision or peripheral neuropathy at this time. (Tr. 21, 302).  The ALJ noted that Plaintiff reported that she

---

[2] The Court notes that the ALJ erroneously referred to Mr. Lacy as a primary care physician in his opinion.

had developed COPD after being in an accident several years prior to the visit. (TR. 21, 302). Plaintiff reported that she was not experiencing any shortness of breath or difficulty breathing at the time.  The ALJ noted that a physical examination of Plaintiff on this date was within normal limits. (Tr. 22, 302).

The ALJ noted that Plaintiff followed up with Mr. Lacy in May 2010. (Tr. 22).  At the time, Plaintiff complained of having neck and back pain for the past two weeks. (Tr. 22).  Plaintiff denied having any recent injury or trauma, and related that the pain comes and goes. (Tr. 22). Plaintiff stated that she was not having any difficulty doing activities of daily living. (Tr. 22).  A physical examination revealed that Plaintiff's cervical and lumbar spines had full range of motion. (Tr. 22).

The ALJ noted that Plaintiff returned to see Mr. Lacy in August 2010, and she reported that her diabetes continued to be controlled with diet and that she was not taking her prescribed medication. (Tr. 22, 297).  Plaintiff complained of back pain that radiated to the left leg and alleged that her left leg gives out on her while walking. (Tr. 22, 298). Plaintiff reported Flexeril helped some but not much. On examination, Plaintiff was in no acute distress but had decreased range of motion of the cervical and lumbar spines and left hip, positive straight leg raises on the left at 40 degrees, and normal deep tendon reflexes. (Tr. 22, 298). Mr. Lacy noted no gait abnormalities. (Tr. 22, 298). Mr. Lacy ordered x-rays of Plaintiff's cervical and lumbar spines and left hip and recommended she stay active throughout the day and take Flexeril. (Tr. 299). The x-rays were normal and demonstrated no abnormalities in Plaintiff's spine or hip. (Tr. 22, 296, 307).

In September 2010, Plaintiff reported that she continued taking Flexeril and that her pain had resolved "for the most part," and she stated she was doing a lot better. (Tr. 22, 296).  Plaintiff

complained of a new onset of pain to the right knee, but she denied any recent injury or trauma and was in no acute distress. (Tr. 22, 296).  On examination, she had full range of motion of the knee, some crepitus, no joint line tenderness, and a normal gait. (Tr. 22, 296).  Mr. Lacy advised her to continue with Flexeril and to take over the counter NSAIDs as needed for knee pain, but, as to her back, leg, and hip pain, Mr. Lacy noted there was no further need for treatment or management because Plaintiff's pain had resolved. (Tr. 296).

On November 4, 2010, Plaintiff learned she was about 11 weeks pregnant. (Tr. 294). She reported that her diabetes mellitus was stable, and no elevated blood pressures were noted (Tr. 295). J. Welch, M.D. discontinued Plaintiff's prescriptions for Lisinopril and Lovastatin, which she admitted to not even filling. (Tr. 295). The following week, Plaintiff continued to control her diabetes with diet, she was in no acute distress, and her gait was normal. (Tr. 282-83). A physical examination was negative for back or extremity abnormalities. (Tr. 288).

Plaintiff's remaining medical appointments in 2010 through May of 2011 related primarily to her prenatal care, constipation, and the delivery of her daughter. (Tr. 276-96, 313-21). These records do not contain any significant findings related to Plaintiff's alleged neuropathy or complaints of pain, nor do they include any information regarding Plaintiff's functional limitations. (Tr. 276-96, 313-21). There are no records demonstrating Plaintiff sought any medical treatment after her daughter's birth on May 14, 2011, until December of 2011, when she established care with Dr. Colette Haywood. (Tr. 313-21, 326-31).

Dr. Haywood noted that Plaintiff had never been to a podiatrist, had not taken any medication for three months, had no diabetic neuropathy or physical disability, and performed activities of daily living normally. (Tr. 23, 326-27). Plaintiff denied having any neck pain, neck stiffness, arthralgias, or tingling or numbness of the feet, and Dr. Haywood noted Plaintiff was

in no acute distress. (Tr. 23, 328). Physical examination findings were normal with respect to Plaintiff's neck, musculoskeletal system, and neurological system, including normal sensation, motor strength, gait, and stance. (Tr. 328-29). Dr. Haywood specifically noted Plaintiff had no diabetic nephropathy, no diabetic peripheral neuropathy, no diabetic autonomic neuropathy, and no diabetic hypoglycemia. (Tr. 23, 327).

As to Plaintiff's mental health issues, the ALJ noted that medical evidence from 2006 indicates that Plaintiff was voluntarily hospitalized and received treatment for suicidal ideation and ongoing treatment for depression. (Tr. 23). In July 2010, Plaintiff underwent a psychological evaluation with William Morton, Psy.D. (Tr. 23). Dr. Morton noted that Plaintiff was a fair historian, reported taking psychiatric medications in the past, but denied taking any at that time. (Tr. 23). Plaintiff reported past involvement with outpatient therapy and psychiatric hospitalizations. (Tr. 23). She admitted to a substance abuse history in the past and stated that she had been clean for three years. (Tr. 23). She completed high school and did not report receiving any special education services. (Tr. 23). Plaintiff lives with her significant other and her overall level of independent function was fair. (Tr. 23). A depression screening was positive with the following symptoms: sleep disturbance, appetite disturbance, irritability, loss of concentration, loss of motivation, little or no energy, fatigue, subjective feelings of sadness, and feelings of worthlessness. (Tr. 23). A mania screening revealed expansive elevate or irritable mood, flight of ideas or subjective experience of racing thoughts, pressured speech and distractibility. (Tr. 23). The ALJ noted that Plaintiff presented with a fair posture, locomotion, and gait, and had no difficulty with extended sitting or arising from a seated position. (Tr. 23). Dr. Morton noted that Plaintiff's attention, concentration, and vigilance was fair, but her thinking ability was subnormal. (Tr. 23). Dr. Morton found that Plaintiff's general fund of knowledge

was limited, and her judgment and reasoning appeared to be poor. (Tr. 23).  Additionally, the ALJ noted that Dr. Morton found that Plaintiff had indications of mild memory impairment. (Tr. 23).

The ALJ noted that Plaintiff did not follow up with a mental health treatment until January 2012 at which time she underwent a psychiatric evaluation with Dr. Gregory Young at Lee Mental Health Center. (Tr. 23).  Plaintiff complained of depression, anxiety, having no energy, and being bipolar, and reported having a bad memory and frequent mood swings. (Tr. 23).  She reported living with her boyfriend and ten month old daughter. (Tr. 23-24).  Plaintiff denied having any suicidal intent or ideation. (Tr. 24).  Her mood and affect were depressed, anxious, and appropriate. (Tr. 24).  Plaintiff was started on Tegretol and Celexa. (Tr. 24).  Plaintiff followed up with medication management and Dr. Young noted that Plaintiff reported being less depressed and having less anxiety. (Tr. 24).

Finally, in reaching his RFC determination, the ALJ considered Plaintiff's testimony at the administrative hearing.  The ALJ noted that Plaintiff testified that she was unable to work due to diabetes mellitus. (Tr. 26).  She indicated that because of her diabetes mellitus she had developed problems in her hands and feet and was prescribed special shoes. (Tr. 26).  The ALJ noted that Plaintiff testified that she is able to sit/stand for 1 to 2 hours and must keep her feet elevated for 3 to 4 hours each day. (Tr. 26).  She reported having little energy and that she is unable to pick up her ten month old daughter, who is cared for by Plaintiff's boyfriend and neighbor. (Tr. 26).  Plaintiff testified that she does not prepare meals or do any household chores. (Tr. 26).  The ALJ noted that Plaintiff appeared at the hearing in a wheelchair and reported having had the wheelchair for two months. (Tr. 26).  She reported that the nerves in her feet and back

had gotten worse and she required the wheelchair to alleviate pain. (Tr. 26).  She endorsed feelings of guilt, worthlessness and crying spells. (Tr. 26).

In this case, the Court finds that the ALJ did not commit reversible error in his RFC determination.  The ALJ's opinion demonstrates that the ALJ reviewed all the medical evidence of record, and adequately articulated his reasoning for his RFC assessment.  The ALJ explained that the record reflects significant gaps in Plaintiff's history of treatment with relatively infrequent trips to the doctor for the allegedly disabling symptoms. (Tr. 27).  The ALJ noted that Plaintiff provided no medical records at or immediately before the alleged onset date. (Tr. 27).  The ALJ noted that there is no evidence of a significant deterioration in Plaintiff's medical conditions since the last date of her employment. (Tr. 27).  Instead, the medical evidence presented indicated that Plaintiff's diabetes mellitus was well controlled and she was not experiencing any recent breathing related problems. (Tr. 27).  The ALJ's finding is consistent with the medical record, which is replete with notations that Plaintiff's diabetes was controlled, by diet alone, and that she had no diabetic neuropathy. (Tr. 253, 278, 282-53, 294-95, 300, 326-27).  Medical records indicate that she was not taking any medications for diabetes mellitus and did not require them. (Tr. 27).  She reported that breathing treatment/medications did help her when she had breathing problems. (Tr. 27).  She has had extensive treatment for diabetes mellitus or asthma, no emergency room visits, and no hospital admissions for the same. (Tr. 27).

As to Plaintiff's subjective complaints at the hearing, the ALJ addressed Plaintiff's complaints and explained his rationale for finding her subjective complaints not credible to the extent that they are inconsistent with the ALJ's RFC.  If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so. [citations omitted] Failure to articulate the reasons for discrediting subjective testimony requires,

as a matter of law, that the testimony be accepted as true." *Wilson v. Barnhart*, 284 F.3d at 1225. "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995)). The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are: "(1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno v. Astrue*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)).

In this case, the ALJ noted that in terms of Plaintiff's alleged diabetes and associated symptoms of neuropathy, the medical evidence of record simply does not support Plaintiff's allegations. (Tr. 26).  The ALJ noted that although Plaintiff testified at the hearing that she required a wheelchair and special shoes for her feet as a result of nerve problems, her most recent medical records from December 2011 indicated that she denied having any complications from diabetes mellitus. (Tr. 26).  The ALJ noted that Plaintiff's treatment records do not support her use of her wheelchair or special shoes, as there is no record of any doctor recommending or prescribing special shoes or a wheelchair.

The Court is unconvinced by Plaintiff's argument that the ALJ erred in his consideration of Plaintiff's mental limitations.  Although he was not required to review and consider Plaintiff's medical records from 2006, as Plaintiff's alleged disability onset date is December 31, 2006, the ALJ nevertheless noted and considered these records.  The ALJ noted that Plaintiff had undergone a consultative examination in January 2010, reported not having any recent treatment, and was not currently using any medications. (Tr. 27).  Plaintiff did not appear to seek mental health treatment until January 2012, at which time she reported having depression, anxiety, and

being bipolar. (Tr. 27). Plaintiff was given medication for these conditions and, on follow-up, she reported feeling much better and that her depression and anxiety had decreased. (Tr. 27).

Plaintiff bore the burden of proving her disability. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). In this case, the record fails to support the limitations alleged by Plaintiff. The ALJ's RFC determination was supported by substantial evidence and, therefore, the Court will not disturb it on appeal.

### B. Whether the ALJ erred in his consideration of Plaintiff's daily activities and ability to care for her child when assessing Plaintiff's credibility.

Plaintiff argues that the ALJ erred by failing to explain how Plaintiff's daily activities and her ability to care for her child conflicted with her inability to work full-time. (Doc. 23 p. 21). Defendant responds that the ALJ properly considered Plaintiff's activities in assessing the credibility of Plaintiff's allegations of disabling symptoms and limitations. (Doc. 26 p. 14).

An individual's daily activities is one factor that an ALJ may consider in addition to the objective medical evidence when assessing the credibility of an individual's statements. SSR 96-7p. Thus, "[w]hile the performance of everyday tasks cannot be used to make a determination that the Plaintiff was not disabled, daily activities can be used as a measure of the Plaintiff's credibility in regard to his ability to perform certain tasks." *Prochilo v. Comm'r of Soc. Sec.*, 2008 WL 768729, at *15 (M.D. Fla. Mar. 20, 2008) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005); *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002); *Norris v. Heckler*, 760 F.2d 1154, 1158 (11th Cir. 1985)).

As part of his credibility assessment of Plaintiff's subjective complaints, the ALJ considered Plaintiff's daily activities, noting that Plaintiff has provided inconsistent information regarding daily activities. The ALJ noted that at the hearing, in her adult function report, and in her pain questionnaire, Plaintiff reported not being able to walk, requiring assistance for every

activity, and being unable to do almost everything, i.e. cooking, bathing, cleaning, etc. Plaintiff completed both forms on May 11, 2010. (Tr. 27). However, Mr. Lacy's treatment notes indicate that Plaintiff had an office visit the very next day on May 12, 2010. (Tr. 27). Notes from this meeting show that Plaintiff reported not being able to "pinpoint any activity that aggravates the pain," and stated that, "she is not having any difficulty doing activities of daily living." (Tr. 27). Further, during this same period, while Plaintiff complained of neck, hip and back pain, the medical evidence shows that these conditions were relieved by medication and her x-rays were unremarkable for these areas. (Tr. 27). The ALJ also pointed out that contrary to her testimony at the administrative hearing, Plaintiff had earlier told Dr. Young that her live-in boyfriend did not do much of anything. (Tr. 27). Further, the ALJ noted that Dr. Morton opined that it appeared that Plaintiff is able to adequately self-care and attend to the activities of daily living. (Tr. 28).

The Court finds no error in the ALJ's consideration of Plaintiff's activities of daily living in assessing her credibility. Under Eleventh Circuit case law, activities of daily living is a proper factor to consider in determining a Plaintiff's credibility. The ALJ's opinion shows that this factor was but one considered and the ALJ's decision was not made on this factor alone. Accordingly, the Court finds no reversible error.

## IV. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence. The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter Judgment accordingly, terminate any pending motions and deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 16, 2014.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties